# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

№ 21-CR-227 (ERK) (RER)

———————————

U̲NITED̲ S̲TATES̲

versus

H̲ERBERT̲ F̲LETCHER̲

———————————

**REPORT & RECOMMENDATION**

November 9, 2023

———————————

T̲O̲ T̲HE̲ H̲ONORABLE̲ E̲DWARD̲ R. K̲ORMAN̲
S̲ENIOR̲ U̲NITED̲ S̲TATES̲ D̲ISTRICT̲ J̲UDGE̲

**RAMON E. REYES, JR., U.S.M.J.:**

On April 2, 2021, Defendant Herbert Fletcher ("Defendant" or "Fletcher") was charged with sex tourism conspiracy and sex tourism, in violation of 18 U.S.C. § 2423(e) and 18 U.S.C. § 2423(f)(2), respectively. (ECF No. 11). Defendant pled guilty to one count of sex tourism from the Superseding Indictment on November 1, 2022, (ECF No. 60), and he was then sentenced. (ECF No. 80). On August 28, 2023, the Government submitted a letter requesting victim restitution (ECF No. 89 ("Gov't. Letter")), which Your Honor referred to me. (Order dated 9/01/2023). Based on the following facts, I respectfully recommend that Defendant be ordered to pay $145,400.61 in restitution.

# BACKGROUND

I. Background

As Your Honor is already familiar with the prior proceedings, I will provide only a brief review. The operative Superseding Indictment charged Defendant with one count of sex tourism conspiracy for conspiring to engage in and one count of sex tourism for knowingly and intentionally engaging in illicit sexual conduct with Jane Doe, who was a minor at the time of the alleged crime. (ECF No. 54). Pursuant to Local Eastern District Rule 50.3.2, the Government notified the Court that the case is presumptively related to another case, *United States v. Victor Hugo Galarza*, No. 19-CR-508 (BMC) (RER), because charges in both actions arose out of the same criminal transactions and events. (ECF No. 12). Victor Hugo Galarza ("Galarza") pled guilty to one count of sexual exploitation of a child and was subsequently sentenced by the Hon. Brian M. Cogan to 210 months of incarceration, five years of supervised release, and an order of restitution in the amount of $104,615. (No. 19-CR-508, Minute Entries dated 5/17/2021 and 5/24/2022).

On November 1, 2022, Fletcher pled guilty to one count of sex tourism. (ECF No. 60). As part of his plea agreement, Defendant agreed to pay restitution to three victims: Jane Doe, Jane Doe #3, and Jane Doe #4.[1] (ECF No. 69, Ex. A ("Agreement") ¶ 12). Subsequently, on June 16, 2023, Defendant was sentenced to a term of imprisonment of ninety-one months, followed by five years of supervised release. (ECF No. 80). On August 28, 2023, the Government filed a letter seeking restitution for the three Jane Does (Gov't. Letter), which Defendant opposed (ECF No. 92 ("Def.'s Opp.")). Specifically, the Government seeks $48,000 for each of the three Jane Does for future psychological care and $20,005.42 to reimburse the non-profit Operation Underground

---

[1] In the Agreement, Jane Doe #3 and Jane Doe #4 are referred to as Victim 1 and Victim 2 respectively. (Gov't. Letter at 1–2).

Railroad ("O.U.R."), which has paid for the Jane Does' past psychological care and for travel expenses related to Jane Doe and Jane Doe #4's appearance at Defendant's sentencing. (Gov't. Letter at 1–2). The Government asks that $50,000 of the requested restitution be paid within one month of an order of restitution. (*Id.* at 2). Of these amounts, the Government suggests that Defendant be held jointly and severally liable with Galarza with respect to $1,500 for Jane Doe, $4,500 for Jane Doe #3, $1,500 for Jane Doe #4, and $10,000 for O.U.R., because they "relate to costs for past and future therapy for which Galarza is also responsible." (*Id.* at 2, n.2). This Court conducted a hearing on the matter on October 31, 2023. (Minute Entry dated 10/31/2023).

## **LEGAL STANDARD**

The Mandatory Victim Restitution Act of 1996 ("MVRA") requires certain defendants to "make restitution to the victim of the offense" when the victims are identifiable and have suffered a physical injury or pecuniary loss. 18 U.S.C. § 3663A(a)(1), (c)(1)(B). A defendant falls under the purview of the MVRA if they are convicted of an offense outlined in section 3663A(c)(1)(A) or if they stipulated to mandatory restitution in a plea agreement. 18 U.S.C. § 3663A(a)(3), (c)(2); *United States v. Rendon-Reyes*, No. 20-446, 2023 WL 3332553, at *2 (2d Cir. May 10, 2023) (summary order). The Second Circuit has stated that when enforcing a restitution order, "[s]ection 3664(h) implies that joint and several liability may be imposed only when a single district judge is dealing with multiple defendants in a single case (or indictment)," and that otherwise "the law does not contemplate apportionment of liability." *United States v. Aumais*, 656 F.3d 147, 156, n.5 (2d Cir. 2011) (citing to cases from the Sixth Circuit and the Fourth Circuit that observed that "joint and several liability is not permissible under § 3664(h) regarding defendants in separate cases").

3

For a court to order restitution under the MVRA, the Government must prove by a preponderance of the evidence that a claimant "(1) satisfies the statutory definition of a victim and (2) has suffered an actual loss as a result of the defendant's criminal conduct." *United States v. Brown*, No. 11-CR-449 (SJ) (RER), 2016 WL 11263165, at *5 (E.D.N.Y. Dec. 2, 2016) (citing 18 U.S.C. §§ 3663A(a)(1), 3664(e)); *see also United States v. Zangari*, 677 F.3d 86, 92 (2d Cir. 2012).

I.   Statutory Definition of a Victim

The MVRA defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." U.S.C. § 3663A(a)(2). To determine whether a person is a victim within the meaning of the statute, a court must first identify the "nature and scope of the offense on which restitution is based" because restitution "may be imposed only for losses arising from the specific conduct that is the basis of the offense of conviction." *United States v. Goodrich*, 12 F.4th 219, 228 (2d Cir. 2021) (quotations omitted). When a defendant pleads guilty, the court evaluates materials supporting the plea to "ascertain the offense of conviction for restitution purposes." *Id.* at 230 (citations omitted).

Then, the court must determine whether that offense was a direct and proximate cause of the harm. *Id.* at 229. The proximate cause requirement does not require "a rigid direct causation standard that would foreclose restitution where even the slightest intervening event severs . . . the link between defendant's crime and victim's loss." *United States v. Marino*, 654 F.3d 310, 319 (2d Cir. 2011) (quotations omitted). However, the "factual and temporal link between crime and loss cannot be tenuous as to require a prolonged and complicated trial on the issue of causation." *Id.* (quotations omitted). Moreover, "victim" is specific to those harmed by the offense, but per the procedural application of the MVRA, when a third party has paid an expense that was incurred by the victim, the court is permitted to order restitution to that third party. 18 U.S.C. § 3664(j)(1); *see*

*United States v. Thompson*, 792 F.3d 273, 278 (2d Cir. 2015) ("where a third party has already reimbursed the victim's losses, § 3664(j)(1) simply shifts *payment* of the restitution amount calculated under § 3663A(b) directly to that party); *see also United States v. Cuti*, 778 F.3d 83, 92 (2d Cir. 2015) (permitting "restitution in situations where a third party has directly paid an expense incurred by the victim").

II.   Actual Loss Calculation

When the offense results in "bodily injury to a victim," restitution includes "an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment." 18 U.S.C. § 3663A(b)(2)(A). In addition, a defendant can be ordered to reimburse the victim for necessary "transportation[] and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4).

The MVRA "caps the restitution award at the actual amount of the victim's loss." *Thompson*, 792 F.3d at 277 (quotations omitted); *United States v. Coriaty*, 300 F.3d 244, 252 (2d Cir. 2002) ("a court's power to order restitution is limited to actual loss") (quotations omitted). At the same time, the court "lacks discretion under the MVRA to deny an award of restitution or to award restitution for anything less than the full amount of the victim's losses." *United States v. Desnoyers*, 708 F.3d 378, 389 (2d Cir. 2013) (quotations omitted). This is in line with the goal of the MVRA: "to make victims of crime whole" by compensating them for their losses. *United States v. Qurashi*, 634 F.3d 699, 703 (2d Cir. 2011) (citations omitted). In turn, the Government must prove the actual amount of the victim's loss by a preponderance of the evidence so that the court

can accurately calculate restitution. 18 U.S.C. § 3664(e); *United States v. Romano*, 09-CR-170 (EK) (VMS), 2022 WL 2666914, at *5 (E.D.N.Y. July 11, 2022) (citing *United States v. Gushlak*, 728 F.3d 184, 195 (2d Cir. 2013)). But the term "actual" does not mean "mathematically precise." *Gushlak*, 728 F.3d at 195. Rather, "a reasonable approximation" calculated by a "sound methodology" is sufficient, "especially in cases in which an exact dollar amount is inherently incalculable." *Id.* at 196; *see e.g.*, *United States v. Rojas*, 853 F. App'x 733, 735 (2d Cir. May 10, 2023) (summary order) (affirming the amount of restitution when the district court relied on the government's reasonable estimates based on information provided by the victims, plea agreements, victim statements, and a restitution hearing).

## **DISCUSSION**

The Government seeks a total of $164,005.42 in restitution for Jane Doe, Jane Doe #3, and Jane Doe #4, with a portion of that paid directly to O.U.R. for expenses it already incurred in relation to the Jane Does' psychiatric treatments.[2] (Gov't. Letter). As a threshold matter, Defendant is required to pay restitution under the MVRA because he agreed to it in his plea agreement. *See* 18 U.S.C. § 3663A(a)(3), (c)(2); (Agreement ¶ 12). However, Defendant objects to the amount of restitution, arguing (1) Defendant's crime was not the sole proximate cause of the victims' past

---

[2] The Government requests that $20,005.42 to be paid directly to O.U.R. for past psychological care and travel costs. (Gov't. Letter at 2). They state that this includes $9,402.71 for Jane Doe, $1,200 for Jane Doe #3, and $9,402.71 for Jane Doe #4. (*Id.*). Receipts for past therapy invoices reflect $1,200 for Jane Doe #3 and $4,800 for Jane Doe and Jane Doe #4 respectively. (*Id.*, Exs. A.1, B.1, C.1). Subtracting those costs leaves $4,602.71 remaining for travel expenses for Jane Doe and Jane Doe #4. However, based on the Court's review of the receipts provided (*id.*, Exs. A.3, C.3), the actual travel expenses for Jane Doe and #4 come to $4,655.17 each.

In addition, as put forth in its Proposed Order, the Government seeks interest on the restitution amount ordered. (Gov't. Letter, Ex. D). However, restitution under the MVRA is only allowed pursuant to the enumerated terms of section 3663A(b). *United States v. Maynard*, 743 F.3d 374, 379 (2d Cir. 2014). When interest has been awarded on restitution, the interest was inherently tied to the victims' loss. *See, e.g.*, *Qurashi*, 634 F.3d at 704 (allowing prejudgment interest to ensure full victim compensation when the defendant's victims losses included the ability to put their money to productive use). Here, the victims did not suffer a monetary loss due to the offense. Therefore, an award of interest cannot reasonably be tied to the order of restitution.

and future therapy needs, (2) the requests for future therapy are not supported by a preponderance of the evidence, and (3) the requests for the victims' travel expenses include improper expenses. (Def.'s Opp. at 3–8).

I. Defendant's Offense Proximately Caused Victims' Harm

It is undisputed that Jane Doe, Jane Doe #3, and Jane Doe #4 are victims of Defendant's crime. Defendant pled guilty to sex tourism and agreed to pay restitution to these three women. (ECF No. 60; Agreement ¶ 12). Accordingly, the Government seeks restitution for the Jane Does' past and future psychological care. (Gov't. Letter at 1–2). Defendant does not oppose the need for restitution or psychological treatment. Instead, he argues that the Jane Does' psychological harm was caused by an unknown number of men who engaged in sexual activity with them as minors. (Def.'s Opp. at 6). He therefore asserts that he should only be responsible for a portion of their treatment. (*Id.*). This argument falls short. Nothing in the record indicates that the Jane Does engaged in commercial sexual activity with other men. The psychologist's letter for Jane Doe and Jane Doe #4 refer to "child commercial sexual violence" and "commercial sexual exploitation of children" (Gov't. Letter, Exs. A.2, C.2), but no statement within or attached to the Presentence Report ("PSR") or made during the October 31, 2023 Hearing supports that "presumably" these then-minors were engaged in regular commercial sex work.[3] (Def.'s Opp. at 6; ECF Nos. 67 ("PSR"), 70 ("PSR Addendum")); 18 U.S.C. § 3664 ("the court shall order the probation officer

---

[3] In fact, in their victim impact statements at sentencing, Jane Doe and Jane Doe #4 both stated that they were not sex workers, but instead were exploited specifically by Fletcher and Galarza. (Sentencing Tr. 17:17–19:16, 19:25–23:1). However, because of the inability to cross-examine these witnesses, and therefore the potential for unreliable testimony, the Court does not rely on these statements alone. *See Gushlak*, 728 F.3d at 193–94 (in the context of restitution, if "the defendant is given an adequate opportunity to present his position," then the court has discretion as to whether to rely on hearsay evidence that has an indicia of reliability without violating a defendant's due process rights) (quotations and citations omitted). In fact, the issue came up at sentencing, and Your Honor found that whether the women were sex workers is irrelevant because Defendant pled guilty to sex tourism in connection with these women. Ultimately, Your Honor found that whether they were sex workers was irrelevant because Fletcher pled guilty to sex tourism in connection with these women. (Sentencing Tr. 17:17–18:1, 22:6–22:10, 30:9–31:21).

7

to obtain and include in its presentence report . . . information sufficient for the court to exercise its discretion in fashioning a restitution order"). Instead, the record merely establishes that Fletcher and Galarza engaged in illicit activity with these specific victims. (*See*, *e.g.*, Agreement; PSR; ECF No. 78 ("Sentencing Tr.")).

Even if there were other causes of the victims' trauma, Defendant pled guilty to sex tourism in connection with Jane Doe and agreed to pay restitution to these three women. (ECF Nos. 60, Agreement ¶ 12). All three Jane Does are receiving psychological care and anticipate future psychological treatment as a result of this offense. (Gov't. Letter, Exs. A.1, A.2, B.1, B.2, C.1, C.2). Therefore, Defendant's offense directly and proximately caused the victims' psychological harms. *See United States v. Raniere*, 18-CR-204 (NGG) (VMS), 2021 WL 9696824, at *9 (E.D.N.Y. May 28, 2021) ("The court is not well positioned to disentangle the psychological harms that a victim may address through the receipt of mental health care, let alone to apportion the costs of such care among underlying harms, and it will not do so absent clear evidence that [the offense] did not give rise to the full extent of [the victim's] psychological care needs.").

II. Loss Calculation

The Government seeks $164,005.42 in restitution. (Gov't. Letter). In opposition, Defendant asserts that (1) the restitution requests for the victims' past and future psychological needs are not supported by a preponderance of the evidence and (2) the travel expenses are improper. (Def.'s Opp. at 4–5, 7–8).

A. Psychological Care

Preliminarily, when an offense results in bodily injury, restitution for "an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care" is appropriate. 18 U.S.C. § 3883A(b)(2)(A). Where, as here,

8

the offense includes forced sexual activity with a minor, the Court finds that this results in bodily harm, from which psychological care may be necessary. *See, e.g.*, *United States v. Keelan*, 786 F.3d 865, 872 (11th Cir. 2015) (affirming the district court's finding that under the MVRA, sexual assault caused bodily injury that required mental health treatment), *cert. denied*, 577 U.S. 1087 (2016); *United States v. Wilcox*, 487 F.3d 1163, 1178 (8th Cir. 2007) (concluding that under the MVRA, it was proper to award the victim of sexual assault costs for psychological treatment). Therefore, the Court finds that Defendant must pay restitution for psychological care.

1. *Past Psychological Care*

The Government carries the burden of demonstrating that Jane Doe, Jane Doe #3, and Jane Doe #4 received past psychological care. *See* 18 U.S.C. §§ 3663A(b)(2)(A), 3664(e), (j)(1). All three Jane Does have undergone therapy, which was paid for by O.U.R., as evidenced by the affidavits from O.U.R. stating that they paid for the treatment, the submitted invoices, and the affidavits by Jane Doe and Jane Doe #4 affirming that they have been receiving treatment. (Gov't. Letter, Exs. A.0–A.2, B.0–C.2; ECF Nos. 95-1, 96-1). The Government has met its burden. *See, e.g.*, *United States v. Popovic*, 8 F. App'x 22, 25–26 (2d Cir. 2001) (summary order) (finding that a court must insure that any relied upon information when awarding restitution is reliable and accurate and ultimately remanding the order of restitution when the district court only relied on the PSR without referring to a source of the information, documentation, or other manner by which it could be verified) (quotations omitted). Accordingly, I respectfully recommend that O.U.R. be reimbursed for past psychological care, including $4,800 for Jane Doe, $1,200 for Jane Doe #3, and $4,800 for Jane Doe #4. *See Thompson*, 792 F.2d at 277 (finding that 18 U.S.C. § 3664(j)(1) shifts the payment of restitution to a third party when the third party has already made payments in support of that victim).

*2. Future Psychological Care*

The Government seeks $48,000 for the next ten years of weekly psychological treatment for all three Jane Does. (Gov't. Letter at 2). In order to calculate restitution for future psychological treatment, in addition to looking at cases following the MVRA, the Court looks for guidance from courts tackling the same issue under under the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1593, because an order of restitution under the TVPA is "issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A." 18 U.S.C. § 1593(a)(2). In other words, under both the MVRA and TVPA, the Government must demonstrate the amount requested by a preponderance of the evidence. 18 U.S.C. §§ 1593(a)(2), 3664(e).

When assessing the "need for long term counseling" and its costs, the court must "explain how it estimated the victims' future expenses." *United States v. Pearson*, 570 F.3d 480, 487 (2d Cir. 2009) (remanding the case to district court to explain its reasoning as to the order of restitution when the district court ordered restitution on the record, but supplied no explanation for how it determined the amount), *remanded to* 2009 WL 2383025 (N.D.N.Y July 30, 2009) (applying a "rule of reasonableness" to determine the estimated future expenses and evaluating each victim's doctor's report and mother's statements to explain the amount of restitution awarded). Where "an exact dollar amount is inherently incalculable," a "reasonable approximation will suffice." *Gushlak*, 728 F.3d at 196. The Court will assess each victim's needs separately by looking to their psychologist's letter in support and their own statements provided in the PSR, at Defendant's sentencing, or by affidavit.[4]

---

[4] The Court notes that the PSR contains a victim impact statement from a Jane Doe #5. (PSR at 7). The Court is unclear whether if this is a typographical error or another Jane Doe. Accordingly, the Court does not assign Jane Doe #5's statement in the PSR to any of the three Jane Does currently being awarded restitution.

First, Jane Doe's psychologist Maria Eugenia Montoya G. ("Montoya") submitted a letter reporting that Jane Doe suffers from anxiety resulting from "child commercial sexual violence," and that she is incapable of responding to social demands, suffers classic signs of post-traumatic stress disorder, and demonstrates a variety of other symptoms. (Gov't. Letter, Ex. A.2 at 1). Further, Montoya states that Jane Doe was evaluated by a psychiatrist with whom she has follow up appointments and who prescribed a medication. (*Id.*). Montoya recommends ten years of continued weekly treatment. (*Id.* at 2). Additionally, Jane Doe submitted an affidavit affirming that she is receiving weekly treatment from Montoya and that she intends to continue to attend the recommended weekly sessions for the next ten years. (ECF No. 96-1). Jane Doe also submitted a victim impact statement for the PSR and attended the sentencing, where she stated, "it has been very difficult for me to move on with my life because I've had to rely on psychology, psychiatry. [Defendant] has caused me a lot of harm in my mental health, emotionally, psychologically, everything." (Sentencing Tr. at 18:11–14).

Jane Doe #3 also receives treatment from Montoya, who submitted a letter asserting that Jane Doe #3 suffers from depression, anxiety, low self-esteem, and low confidence in others due to the trauma of sexual violence. (Gov't. Letter, Ex. B.2 at 1). Montoya posits that since the traumatic events, because of her low self-worth, Jane Doe #3 has become vulnerable to other negative situations. (*Id.*). Thus, Montoya finds it necessary that Jane Doe #3 continue psychological treatment for ten more years. (*Id.* at 2).

Turning to Jane Doe #4, Montoya also submitted a letter in support of continued treatment. (Gov't. Letter, Ex. C.2). Specifically, Montoya reports that Jane Doe #4 presents multiple symptoms consistent with post-traumatic stress, such as anxiety, intrusive re-experiencing, alert responses, phobic responses, depression, guilt, helplessness, a loss of security and confidence, and

more. (*Id.* at 1). She reports that Jane Doe #4 also visits a psychiatrist who prescribes two medications. (*Id.* at 2). Accordingly, Montoya recommends that treatment be continued for another ten years. (*Id.*). In addition, the Government has submitted an affidavit from Jane Doe #4, stating that she is currently attending counseling with Montoya, who advised her that she should attend sessions once a week for ten years, and that she plans to proceed with this treatment. (ECF No. 95-1). Jane Doe #4 also attended Defendant's sentencing proceeding, where she explained that since the events involving Defendant, "I haven't been able to have a normal life . . . I always live in fear." (Sentencing Tr. at 21:17–22:5).

Additionally, in the PSR addendum, the Government provided a victim impact statement from Tyler Schwab, who works with the Jane Does through O.U.R. (PSR Addendum at 6). He details the culture of sex tourism in Colombia and how, through ten more years of psychological care, each of the three women will have a chance to overcome their pasts. (*Id.*).

Based on these submissions, the Court finds that Jane Doe, Jane Doe #3, and Jane Doe #4 are all entitled to future psychological care. *See United States v. Sanderson*, 515 F. App'x 16, 19 (2d Cir. 2013) (summary order) (affirming the district court's award of restitution when it relied on the government's proposed figure, which was supported by the affidavit of a licensed social worker). The Court is entitled to rely on the PSR and various submissions in support. 18 U.S.C. § 3446(a). In addition, the PSR disclosed Defendant's economic circumstances, as required by U.S.C. § 3664(a). (PSR at 18–19). Therefore, I respectfully recommend that Jane Doe, Jane Doe #3, and Jane Doe #4 each be awarded $48,000 for their future psychological care.

B. <u>Travel Expenses</u>

Under the MVRA, a defendant must "reimburse the victim for . . . necessary . . . transportation [] and other expenses incurred during . . . attendance at proceedings related to the

12

offense. 18 U.S.C. § 3663A(b)(4). Courts in this Circuit take "a broad view of what expenses are 'necessary,'" respecting the "limits of the statute" without narrowing it. *United States v. Maynard*, 743 F.3d 374, 381 (2d Cir. 2014) (quotations omitted). At the same time, the MVRA "does not authorize the court to order a defendant to pay restitution to any person who was not a victim of the offense of which the defendant was convicted." *United States v. Reifler*, 446 F.3d 65, 121 (2d Cir. 2006) (citations omitted); 18 U.S.C. § 3663A(a)(1).

Here, the Government seeks reimbursement to O.U.R. for flights, hotels, food, clothing, and other miscellaneous expenses, totaling $9,310.34, associated with travel expenses for Jane Doe and Jane Doe #4's participation in Defendant's sentencing.[5] (Gov't. Letter at 2). Defendant argues that many of these expenses are improper because they (1) include lodging and meals for more than was necessary for one day of sentencing, (2) reflect excessive expenses for more than just the two victims, and (3) include receipts that are undated and unclear or for items that are not travel expenses. (Def.'s Opp. at 7–8).

First, the flights and hotel for four nights were for Jane Doe, Jane Doe #4, and their psychologist.[6] They arrived in New York at around 10:30 P.M. on May 28, 2023, and left on June 1, 2023. (Gov't. Letter, Exs. A.3, C.3 (together, "Travel Expenses") at 5). Defendant's sentencing occurred on May 31, 2023. (ECF No. 80). The Court takes no issue with the fact that the victims arrived late on May 28, 2023, giving them extra time in case of unforeseen travel issues. However, only Jane Doe and Jane Doe #4, and not their psychologist, are victims. The Government proffered that the Jane Does felt unable to attend the proceeding unless the psychologist was present. (ECF

---

[5] The Court calculated the total sum of expenses based on the receipts submitted with this restitution request.

[6] The flight receipts do not state how many seats were purchased for each flight. (Travel Expenses at 4–6). At the restitution hearing, the Government stated that it was their understanding that the flights were for three people, i.e., for Jane Doe, Jane Doe #4, and their psychologist. (Restitution Tr. 28:6–18). Defendant did not object to this statement, and the Government did not correct it at a later point, so the Court accepts it as accurate.

13

No. 98 ("Restitution Tr.") 27:3–14). As such, the psychologist stood next to them in court while they made their victim impact statements. (Sentencing Tr. at 17:8–12). Considering the broad reading of what expenses are "necessary" in the Second Circuit, the Court finds that the psychologist's attendance was a necessary expense so that the Jane Does were able to participate in the proceeding. Thus, any expenses related to the psychologist fall within the bounds of the statute. Accordingly, I respectfully recommend that $7,572.32 be ordered for flight and hotel expenses related to travel for sentencing.

Next, the meal receipts reflect food and drink for four people, who are presumed to be Jane Doe, Jane Doe #4, the psychologist, and O.U.R. representative Tyler Schwab. (*See generally* Travel Expenses). As an initial matter, the Court is willing to find that meals are necessary "other expenses" for victims who are traveling for the purpose of participating in criminal proceedings. 18 U.S.C. § 3663A(b)(4); *see also Maynard*, 743 F.3d at 381 (discussing the limits of necessity). However, the Court does not find that lavish dinners fall within the purview of the statute. Thus, the Court will exclude the receipt for a dinner at Carmine's restaurant, which includes a steak for over one hundred dollars, from its calculations. Furthermore, Defendant objects to the inclusion of Mr. Schwab's meals. At Defendant's sentencing, Mr. Schwab gave a statement, which was an abridged version of the statement he provided for the PSR. (Sentencing Tr. at 23:9–24:17; PSR Addendum at 6). Although O.U.R. is integral in helping the Jane Does through their recovery, the Court does not find that payment for Mr. Schwab's attendance constitutes a necessary expense for the Jane Does to travel to the hearing. Accordingly, all food receipts will be reduced by one quarter. Therefore, I recommend ordering a total of $626.74 for food-related expenses.

The Government submitted three unidentified receipts. First is an undated receipt for $5.07 that reflects spending at the Salt Lake City International Airport. (Travel Expenses at 9). Neither

14

of the Jane Does' or their psychologist's flight routes connected in Salt Lake City, so the Court believes that this was submitted in error. The next unidentified submission is a submission by Mr. Schwab reflecting a lost receipt for the amount of $2.08. (*Id.* at 23). Since the Court cannot identify the purpose of this receipt, it will not include it in the total award. Third is a screenshot of a text message allegedly from PayPal stating, "You have paid $150.02 USD to Ashfaq trans corp." (*Id.* at 27). The Court has no information to confirm who sent or received the text message or the identity of Ashfaq trans corp. Accordingly, these three receipts will be subtracted from the total awarded.

As for the additional expenses, the Government submitted receipts for two temporary cell phones and clothing. (*Id.* at 7, 16, 18–19). Without any context for these items, the Court cannot find them necessary for Jane Doe and Jane Doe #4's participation in Defendant's sentencing. *See Maynard*, 743 F.3d at 381 (expenses outside those enumerated in § 3663A(b) are not compensable and reasonably limiting the bounds of "other expenses" to what would be required to participate in an investigation or proceeding).

Therefore, I respectfully recommend that the total amount of restitution to reimburse O.U.R. for travel expenses be $8,100.61.

III. <u>Joint and Several Liability</u>

The Government requests that $8,500 of the restitution ordered be jointly and severally with Galarza. (Gov't. Letter at 2, n.2). This amount includes $1,500 for Jane Doe, $4,500 for Jane Doe #3, $1,500 for Jane Doe #4, and $10,000 for O.U.R. (*Id.*). This request is improper because the MVRA only allows for joint and several liability when one district judge is dealing with a single case or indictment. *Aumais*, 656 F.3d at (citations omitted); 18 U.S.C. § 3664(h). Furthermore, the Local Eastern District Rule under which Fletcher's and Galarza's cases are

15

related does not "vest any rights in litigants" and is in place only for "internal management of the case load of the court." Loc. E.D.N.Y. R. 50.3.2. Therefore, the Court declines to impose joint and several restitution.

Still, the Court is concerned with awarding double restitution, which is not allowed under the MVRA. *See Thompson*, 792 F.3d at 277 (the goal of the MVRA is to make a crime victim whole, which means awarding the victim no more than their actual losses) (citations omitted); *Qurashi*, 634 F.3d at 703 ("the award cannot allow a victim to recover more than his due") (quotations omitted). If the Court were to order the full amount of restitution requested by the Government, then the Jane Does and O.U.R. would receive more than their losses because both Galarza and Fletcher would be compensating them for a portion of the same losses. (*See* Gov't. Letter at 2, n.2). Therefore, because the amount of restitution ordered for Galarza is on the whole less than what was requested for Fletcher, and because the portion for which the two Defendants are considered jointly and severally liable is a small fraction of the total requested for Fletcher, the Court recommends reducing Fletcher's total order by $8,500.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that Defendant be ordered to pay a total of $145,400.61 in restitution, inclusive of $46,500 to Jane Doe, $43,500 to Jane Doe #3, $46,500 to Jane Doe #4, and $8,900.61 to O.U.R, all of which reflects the past and future psychological care and travel expenses, less the amount paid by Galarza. I recommend that $50,000 be paid within one month of this order, with the remainder payable at a rate of ten percent of Defendant's gross monthly income. Further, restitution shall be provided to the victims directly before any compensation is received by O.U.R.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Edward R. Korman within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.

Hon. Ramon E. Reyes, Jr.
Digitally signed by Hon. Ramon E. Reyes, Jr.
Date: 2023.11.09 13:33:26 -05'00'

_____
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: November 9, 2023
Brooklyn, NY